UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TINA MARIE LANGWAY,

      Plaintiff,

v.                                            Case No. 8:18-cv-549-T-30CPT

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner of
Social Security,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the Commissioner's decision denying her claim for Supplemental Security Income (SSI) payments. For the reasons discussed below, I recommend that the Commissioner's decision be reversed and remanded.

### I.

The Plaintiff was born in 1971, has a tenth-grade education, and has no past relevant work experience. (R. 43-44). In July 2013, the Plaintiff applied for SSI, alleging disability as of November 20, 2007. (R. 68). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 68-94).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on March 15, 2016.  (R. 40).  The Plaintiff was represented by counsel at that hearing and testified on her own behalf.  (R. 42-59, 61-66).  A vocational expert (VE) also testified.  (R. 59-61).

Following the hearing, the ALJ ordered the Plaintiff to submit to both a psychological and a physical consultative examination.  (Doc. 24 at 14).  Those examinations were performed by psychologist, Thomas Trimmer, Ph.D., and family medicine physician, Daniel Johnson, M.D., respectively.  (R. 636-62).

In a decision dated December 14, 2016, the ALJ found that the Plaintiff: (1) had not engaged in substantial gainful activity since her application date of July 3, 2013; (2) had the severe impairments of anxiety, depression, fibromyalgia, polysubstance abuse,[1] degenerative disc disease, and chronic obstructive pulmonary disease (COPD); (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform less than the full range of light work, subject to certain physical, mental, and environmental limitations; and (5) based on the VE's testimony, was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (R. 18-33).  In light of these findings, the ALJ concluded that Plaintiff was not disabled.  (R. 33).

---

[1] The ALJ noted that this impairment was not material to any of his findings.  (R. 20).

The Appeals Council subsequently denied the Plaintiff's request for review.  (R. 1-6).  Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).[2]   A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to perform past relevant work; and (5) can perform other work in the national economy given her RFC, age, education, and work

---

[2] Unless otherwise indicated, all citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

3

experience.  *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).  While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  In the end, however, "the overall burden of demonstrating the existence of a disability as defined by the . . . Act . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A Social Security claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing.  *See* 42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence.  *See id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Although no deference is given to the Commissioner's legal conclusions, her findings of fact "are conclusive if they are supported by 'substantial evidence.'" *Doughty*, 245 F.3d at 1278 (11th Cir. 2001) (quotation and citation omitted).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Hargress*, 883 F.3d at 1305 n.2 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  "Put differently," the court "must decide whether on this record it would have been possible for a reasonable jury to reach the [agency's] conclusion." *Washington*, 906 F.3d at

4

1358. In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

III.

The Plaintiff raises four challenges on appeal: (1) the ALJ erred in relying on the VE's testimony in finding that the Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy; (2) the ALJ failed to properly credit the opinions of the two consultative examiners, Drs. Trimmer and Johnson; (3) the ALJ failed to properly consider the impact of the Plaintiff's need to be absent from work for medical treatment in determining her RFC; and (4) the ALJ erred in determining that a stroke the Plaintiff claims she suffered was not a medically determinable impairment.[4] (Doc. 24 at 14-43). While I find that the Plaintiff's latter three contentions do not have merit, I conclude that her first one does. Because that contention is dispositive of the Plaintiff's appeal, I begin my analysis there.

A.

As noted, the ALJ determined that the Plaintiff had the RFC to perform less than the full range of light work, subject to certain physical, mental, and environmental limitations. Of significance here, one of the Plaintiff's mental limitations was her ability to understand, remember, and carry out only simple instructions. (R. 22).

---

[4] I have reordered the Plaintiff's challenges for purposes of my analysis.

At the hearing, the VE testified that an individual with the Plaintiff's limitations could perform three types of jobs, all of which, the VE asserted, existed in significant numbers in the national economy: Mailroom Clerk, Packer, and Product Sorter.  (R. 60-61).  For each position, the VE identified the applicable code from the Dictionary of Occupational Titles (DOT),[5] the specific vocational preparation number (SVP),[6] and the number of available jobs in the regional and national economies.  *Id.*  Although the ALJ did not inquire of the VE whether her testimony was consistent with the DOT, the ALJ nonetheless concluded in his decision that it was and determined that the Plaintiff could successfully adjust to other work existing in significant numbers in the national economy based on the VE's information.  (R. 32-33).

The Plaintiff takes issue with both the VE's testimony and the ALJ's reliance on it.  In particular, the Plaintiff contends that the reasoning level[7] for two of the three jobs identified by the VE—Mailroom Clerk and Packer—exceeded her RFC, creating a conflict in the evidence that the ALJ was obliged to resolve before relying on the VE's testimony.  (Doc. 24 at 30-33).  The Plaintiff also asserts that substantial evidence

---

[5] The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington*, 906 F.3d at 1357 n.2.

[6] SVP numbers range from levels one to nine, DOT, Appendix C: Components of the Definition Trailer, 1991 WL 688702, and relate "to the vocational preparation required to perform a job," *Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1302 n.3 (M.D. Fla. 2006).

[7] Reasoning levels—as distinct from SVP numbers—mandate the ability to perform certain basic functions related to education and require the individual to be capable of carrying out instructions and perform mental tasks.  *See* DOT, Appendix C: Components of the Definition Trailer.  Reasoning levels range from one to six.  *Id.*

does not support the ALJ's finding that the jobs identified by the VE exist in significant numbers because the VE's job numbers are not credible. *Id.* at 33-35. To support this latter contention, the Plaintiff cites to job number statistics that purportedly originate from the U.S. Department of Labor's Bureau of Labor Statistics (BLS) and reveal a reduced number for each identified position. *Id.* The Plaintiff submits that each job the VE identified falls within a larger group of occupations (Occupational Employment Statistics or OES categories). *Id.* Based on the number of jobs the BLS lists for the larger OES category for each particular position and excluding the number of those positions that are only part-time, the Plaintiff reasons that the VE overstated the extent to which those positions exist in the national economy. *Id.* Consequently, she asserts that the ALJ erred in relying on those numbers. *Id.*

The Commissioner responds that the Plaintiff's RFC does not preclude her performance of the jobs identified by the VE, and, while not denying that the VE's job numbers are overstated, nonetheless maintains that the Plaintiff has failed to show that an insufficient number of the identified jobs exist in the national economy. *Id.* at 35-38.

After a careful and thorough review of the matter, I find that the Plaintiff has the better argument. As the Eleventh Circuit recently made clear, where, as here, an ALJ elects to elicit testimony from a VE, he "has an affirmative obligation to identify any 'apparent' conflict [between the VE's testimony and the DOT] and to resolve it." *Washington*, 906 F.3d at 1362; *see also* Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (clarifying ALJ's obligations to resolve conflicts between DOT

and expert evidence).  An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE." *Washington*, 906 F.3d at 1365.  Instead, "[a]t a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id*. at 1365.

The ALJ's duty to take notice of and resolve apparent conflicts exists both during and after the hearing and does not depend on whether they are identified by a party.  *Id*. at 1363.   An ALJ's "failure to properly discharge this duty means [his] decision is not supported by substantial evidence." *Id*. at 1362.

The ALJ did not fulfill his duty in this case.   The Mailroom Clerk position, at reasoning level three, requires an individual to apply a "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to deal "with problems involving several concrete variables in or from standardized situations."  DOT 209.687-026, 1991 WL 671813.  The Packer position, at reasoning level two, involves the application of a "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to deal "with problems involving a few concrete variables in or from standardized situations."  DOT 559.687-074.  1991 WL 683797.

From these DOT descriptions, it is unclear that an individual such as the Plaintiff who is restricted only to understanding, remembering, and carrying out simple instructions would be able to successfully perform such work.  *See, e.g., Akins v. Comm'r of Soc. Sec.*, 2009 WL 2913538, at *5 (M.D. Fla. Sept. 10, 2009) (questioning

8

whether claimant limited to simple repetitive tasks could perform work at reasoning level 2 or 3 and highlighting ALJ's failure to address the question); *McLain v. Astrue*, 2008 WL 616094, at *6 (M.D. Fla. Mar. 3, 2008) (finding lack of substantial evidence to support ALJ's reliance on VE testimony where apparent conflict between plaintiff's restriction to simple, repetitive tasks and jobs with reasoning level two went unaddressed); *Leonard v. Astrue*, 487 F. Supp. 2d 1333, 1339-40 (M.D. Fla. 2007) (rejecting recommendation to affirm Commissioner's decision where ALJ failed to acknowledge apparent conflict between VE testimony that plaintiff could perform work with reasoning level three and RFC limitation to simple, routine, and repetitive tasks, and finding unclear whether this limitation precluded work at reasoning level two); *Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1303-04 (M.D. Fla. 2006) (concluding that remand for resolution of apparent unresolved conflict between jobs with DOT reasoning level three and plaintiff's limitation to simple interactions and tasks is appropriate per SSR 00-4p).

Despite this apparent discrepancy, the ALJ did not address, much less resolve, it. *Cf. Washington*, 906 F.3d at 1365-66 (where a "reasonable comparison" of the DOT descriptions and the VE's testimony "suggests that there is a discrepancy," the ALJ is required "to identify it, ask about it, and resolve it in his opinion."). Indeed, although the ALJ summarily concluded in his decision that the VE's testimony was consistent with the DOT (R. 32), he neglected to even inquire of the VE whether that was the case, either during the hearing or afterwards. This much the Commissioner seems to

concede.  (Doc. 24 at 38).  Nor did the ALJ provide any rationale for this conclusion. (R. 32).

This Court's opinion in *Leonard* is persuasive in this respect.  In rejecting the Magistrate Judge's recommendation to affirm the Commissioner's decision, the Court explained that, while "the VE could have relied on her experience and observations" in concluding that the plaintiff retained the capacity to perform work with a reasoning level of three, "such a conclusion would be mere speculation."  *Leonard*, 487 F. Supp. 2d at 1340.  Because the ALJ did not elicit VE testimony on the issue, the Court was unable to "determine, with any certainty, based on the record before it that the VE would have made such a finding."  *Id.*  As consequence, the Court could not countenance the ALJ's reliance on the VE's testimony.  *Id.* at 1340-41.

The contrary cases upon which the Commissioner relies are unpersuasive. (Doc. 24 at 36-37).  As an initial mater, these decisions were issued before the Eleventh Circuit's recent opinion in *Washington,* which—as noted—made clear that an ALJ's failure to discharge his affirmative obligation to identify and resolve any apparent conflict between the DOT and the VE's testimony—even where not identified by a party—was fatal.  906 F.3d at 1362.

In addition, the only Eleventh Circuit decision the Commissioner does cite— *Hurtado v. Astrue*—is readily distinguishable.  In that case, the district court accepted the Commissioner's contention that, although the ALJ limited the plaintiff to simple routine tasks, this limitation did not bear on the plaintiff's ability to reason, and her college-level education belied any argument that she could not perform jobs with a

reasoning level of two. *Hurtado*, 2010 WL 1850261, at *11 (S.D. Fla. Apr. 14, 2010), *report and recommendation adopted by*, 2010 WL 1850242, at *2-3 (S.D. Fla. May 7, 2010). In affirming the district court's decision, the Eleventh Circuit relied primarily on the plaintiff's specific educational and vocational history. *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795 (11th Cir. 2011). In particular, the court noted that the plaintiff possessed a master's degree, worked as a teacher for seventeen years, and was scored with an average to high cognitive ability in a recent evaluation. *Id.* On these facts, the Eleventh Circuit perceived no apparent inconsistency between the VE's testimony that the plaintiff could work as a fast food worker or as a mail clerk, even though those jobs involved reasoning levels of two and three, respectively. *Id.*

Here, the Commissioner has not identified any similar academic and vocational records evidencing the Plaintiff's capacity to perform the jobs of Mailroom Clerk and Packer despite her ability to understand, remember, and carry out only simple instructions. As such, the Commissioner's reliance on *Hurtado* is unavailing.

I am similarly unpersuaded by the Commissioner's argument that the ALJ's disability determination should nevertheless stand because the third job identified by the VE, Product Sorter, has a reasoning level of one[8] and exists in significant numbers in the national economy. (Doc. 24 at 37-38). Under the Regulations, "work exists in

---

[8] Reasoning level one requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT 529.687-186, 1991 WL 674781. The Plaintiff does not argue that her mental limitations preclude work with a reasoning level of one. (Doc. 24 at 30-35).

the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country."  20 C.F.R. § 416.966(a).  Although ALJs are not required to identify a precise tally of the potential positions available, they must "articulate specific jobs" that exist in the national economy "that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture."  *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted).  Where an ALJ uses the services of a VE toward this end, the VE "may rely on his knowledge and expertise without producing detailed reports or statistics in support of his testimony."  *Griffin v. Comm'r of Soc. Sec.*, 2018 WL 3352929, at *10 (M.D. Fla. June 20, 2018) (citing *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) and *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012)).

In this case, while the VE was entitled to rely on her knowledge and expertise to support her testimony on the numbers of jobs that exist for each identified position, she did not testify to that effect.  In fact, she did not provide any testimony regarding the basis of the job numbers she tendered, and neither party so inquired.  Thus, the Court is unable to discern from the record how the VE arrived at those numbers, which the Plaintiff claims—and the Commissioner does not deny—are vastly overstated.

The absence of such evidence distinguishes this case from those where the courts have upheld a VE's job numbers despite attacks on their accuracy.  *See, e.g., Teague v. Comm'r of Soc. Sec.*, 743 F. App'x 410, 412 (11th Cir. 2018) ("The [VE's] unrebutted testimony—based on her experience, practice, having completed onsite job

12

analyses for the specific jobs for which she found [the plaintiff] qualified, and the [DOT]—constituted substantial evidence . . . ."); *Pena v. Comm'r of Soc. Sec.*, 489 F. App'x 401, 402-03 (11th Cir. 2012) ("Here, the VE testified that he arrived at his estimates by consulting multiple sources of unquestioned reliability."); *Bryant*, 451 F. App'x at 839-840 (upholding ALJ reliance on VE testimony where record reflected that VE had a reasoned basis for arriving at specific number of jobs accommodating plaintiff's RFC, including reference to census figures, state information, labor market surveys, and job analyses); *Curcio*, 386 F. App'x at 926 (rejecting plaintiff's challenge to adequacy of foundation of VE testimony on job numbers where VE testified to using labor market surveys and her experience in determining the number of suitable jobs in the economy and twice affirmed that her testimony was consistent with the DOT).[9]

Based on all of the above, I am unable to conclude that substantial evidence supports the ALJ's finding that the jobs identified by the VE exist in significant numbers in the national and regional economies. The record in this case simply does not allow for it. Accordingly, I recommend remanding the case to the Commissioner

---

[9] While some of these courts gave considerable weight to the plaintiff's failure to question the VE regarding the bases of her testimony, the vitality of those decisions in the wake of *Washington* is unclear. *See Washington*, 906 F.3d at 1356 ("Central to our holding is the recognition that in the context of a Social Security disability adjudication we are dealing with an inquisitorial proceeding . . . . In processing disability claims, the ALJs do not simply act as umpires calling balls and strikes. They are by law investigators of the facts, and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case."). In any event, given that the Commissioner does not dispute that the VE's job numbers are overstated and the absence of record evidence to support those numbers, I do not find that the Plaintiff's failure to question the VE concerning the source of those numbers is fatal to her challenge.

to obtain additional evidence on the matter. *See Washington*, 906 F.3d at 1358 ("Remand for further factual development of the record before the ALJ is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice.") (citation omitted); *Lynch v. Astrue*, 358 F. App'x 83, 88 (11th Cir. 2009) (reversing district court affirmance of Commissioner's decision for lack of relevant evidence sufficient to support ALJ's conclusion that other suitable jobs existed where basis for VE's job numbers was called into question at the hearing and that question was left unanswered); *Griffin*, 2018 WL 3352929, at *8-10 (finding that substantial evidence does not support ALJ's decision where VE relied on the OES for job numbers and could not reduce such numbers to the specific jobs he identified), *report and recommendation adopted by*, 2018 WL 3344535 (M.D. Fla. July 9, 2018); *Smith v. Berryhill*, 2018 WL 2227225, at *7-8 (M.D. Fla. Apr. 12, 2018) (recommending remand to determine whether there are other jobs plaintiff can perform based on plaintiff's argument that VE's job numbers appear to be based on OES groups that contain more than one DOT title), *report and recommendation adopted by*, 2018 WL 2225256 (M.D. Fla. May 14, 2018).

### B.

If the Court accepts the above findings, it need not address the Plaintiff's remaining challenges. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised); *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must

reassess the entire record).  I do so here in case the Court disagrees with my conclusion regarding the Plaintiff's first claim of error.

As noted, the Plaintiff's second challenge is that the ALJ did not properly credit the opinions of the two consultative examiners, Drs. Trimmer and Johnson.  A review of the record, the case law, and the pertinent Regulations reveals this claim to be without merit.

In evaluating an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (alteration in original) (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  If a doctor's statement rises to the level of a "medical opinion," an ALJ "must state with particularity the weight given" to that opinion and "the reasons therefor."  *Id.* at 1179 (citation omitted).

The Regulations set forth three tiers of sources for medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians.  *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)).  While an ALJ must

usually afford substantial or considerable weight to a treating physician's opinion, the opinion of a one-time examining doctor—such as a doctor who performs a consultative examination—merits no such deference. *Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). An examining doctor's opinion is, nevertheless, usually accorded greater weight than that of a non-examining physician. *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler,* 764 F.2d 834, 835 (11th Cir. 1985)). In the end, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Id.* (citing *Sryock,* 764 F.2d at 835).

The Plaintiff's challenges to the ALJ's evaluation of the opinions of Drs. Trimmer and Johnson fail on a number of levels. As a threshold matter, the ALJ met his obligation to state with particularity the weight he afforded the doctors' opinions and the rationale behind his assessments. *Winschel*, 631 F.3d at 1179 (citation omitted).

In addition, his decision to partially credit the physicians' opinions is supported by substantial evidence. In this regard, the ALJ gave only moderate weight to the opinions of each physician, in part, because both were one-time consultative examiners—not treating doctors. Thus, while the ALJ was required to consider their opinions, he was not obliged to accord them any special deference.

Furthermore, the ALJ reasoned that both physicians seemed to rely heavily and uncritically on the Plaintiff's subjective reports of her symptoms and limitations. (R. 30). The doctors' substantial reliance on the Plaintiff's subjective complaints

supported the ALJ's decision to discount their opinions, particularly given his finding that the Plaintiff's "longitudinal medical history [wa]s not necessarily consistent with her allegation of disability," a determination which the ALJ buttressed with a reference to a host of medical evidence of record.  (R. 27-29, 31).

Notably, the Plaintiff does not expressly challenge the ALJ's assessment of her credibility.  Instead, she seems to assert that state agency doctors who also consulted in this matter found the Plaintiff's subjective reports to be credible.[10]  (Doc. 24 at 18). This undeveloped argument, however, is alone insufficient to overcome the ALJ's comparison of the Plaintiff's subjective reports to the medical evidence, which included several objective tests, as well as physical and mental examinations.  (R. 27-29).  Even were the Plaintiff's argument regarding the state agency doctors more robust, the ALJ set forth his rationale for according only moderate weight to those consultants, who—like Drs. Trimmer and Johnson—did not examine or treat the Plaintiff.  (R. 30). Thus, the fact that the state agency consultants did not doubt the Plaintiff's credibility provides no basis to find error in the ALJ's treatment of the two consultative examiners' opinions.  *See, e.g., Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) (stating that an ALJ may properly discount a physician's opinion that is based primarily on the claimant's subjective complaints of pain) (citation omitted); *Adzima v. Comm'r of Soc. Sec.*, 2010 WL 5174495, at *7 (M.D. Fla. Dec. 15, 2010) ("It is well-settled that an ALJ may disregard a medical opinion premised on the claimant's

---

[10] This state agency consulting physician nevertheless concluded that the severity of the Plaintiff's allegations "is not consistent with the medical evidence."  (R. 90).

self-reported symptoms if the ALJ has reason to doubt the claimant's credibility.") (citations omitted).

The ALJ's decision to afford only moderate weight to the consultative examiners' opinions is supportable for other reasons as well. Beginning with Dr. Trimmer, the ALJ determined that the doctor's assessments of the Plaintiff were "somewhat internally inconsistent." (R. 30). In particular, the ALJ took issue with: (1) Dr. Trimmer's opinions that the Plaintiff had only mild to moderate memory deficits, but greater limitations in understanding, remembering, and carrying out complex instructions; and (2) the extremely low scores Dr. Trimmer assigned to the Plaintiff's Wechsler Memory Scale (WMS) test, when compared with the better results she achieved on Dr. Trimmer's mental status evaluation. *Id.* The ALJ also considered that the Plaintiff's ability to perform all activities of daily living, among other things, conflicted with the greater mental restrictions assessed by Dr. Trimmer. *Id.*

To the extent that the Plaintiff's argument in this regard calls for the Court to re-weigh the evidence cited by the ALJ, it is a call the Court must reject. It is not for the Court to determine, for instance, whether the results of the WMS test are more probative of the Plaintiff's memory deficits than the results of Dr. Trimmer's mental status examination. (Doc. 24 at 17).[11]

---

[11] Not only is the Plaintiff's challenge to the ALJ's evaluation of Dr. Trimmer's opinions insufficient, but it also appears that the ALJ credited many of those opinions. As a result, any alleged error the ALJ may have made in not assigning those opinions greater weight would appear to be harmless. *See Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (per curiam) (citation omitted); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008).

The Plaintiff's challenge to the ALJ's assessment of Dr. Johnson's opinions fares no better. The gist of her argument is that in refusing to adopt each particular restriction the physician offered, the ALJ improperly "played doctor" by substituting his own opinions. (Doc. 24 at 16-19). This contention misses the mark. The ALJ is charged with determining the Plaintiff's RFC, and he does not err in this endeavor solely by declining to adopt the restrictions offered by an examining physician. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").[12]

Furthermore, the ALJ accorded only moderate weight to Dr. Johnson's opinion because—in addition to the reasons stated above—certain results of Dr. Johnson's physical examination and the Plaintiff's pulmonary function testing revealed abilities greater than those reflected in the doctor's ultimate opinions. (R. 30). The Plaintiff's conclusory contention that Dr. Johnson's findings comported with

---

[12] The authority upon which the Plaintiff relies in this regard is materially distinguishable. (Doc. 24 at 14-15, 19). In *Goodley v. Harris*, 608 F.2d 234 (5th Cir. 1979), the ALJ made the arbitrary call that the plaintiff was not disabled in the face of uncontroverted medical opinions and substituted his own lay opinion as to the plaintiff's best course of treatment. Similarly, in *Hill v. Barnhart*, 2007 WL 438161 (N.D. Ga. Jan. 16, 2007), the ALJ rejected the medical opinion of a treating source in favor of his own speculation that the plaintiff's impairments would improve under certain circumstances in. Likewise, in *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985), the ALJ refused to find the plaintiff's hypertension a "severe impairment" despite two uncontroverted medical opinions supportive of a disability finding. And finally, in *Mulholland v. Astrue*, 2008 WL 687326 (N.D. Ga. Mar. 11, 2008), the ALJ failed to provide proper reasons for rejecting the doctor's opinions and failed to identify evidence supporting this decision.

his conclusions (Doc. 24 at 18) is insufficient to overcome the ALJ's references to record evidence that support the ALJ's assessment of Dr. Johnson's opinions.

In sum, the ALJ's decision to discount the opinions of the consulting doctors is supported by substantial evidence and should not be overturned.

*C.*

I likewise find unavailing the Plaintiff's contention that the ALJ erred by failing to properly consider the impact her absenteeism from work would have on her ability to maintain a job. (Doc. 24 at 25-28). Her argument in this regard amounts to a laundry list of alleged impairments, complaints, and symptoms, coupled with the assertion that her testimony concerning the frequency of her medical appointments rule out competitive employment. *Id.*

The mere existence of an impairment, however, is generally insufficient, in and of itself, for assessing a claimant's ability to procure and sustain employment. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) (distinguishing existence of plaintiff's leg and shoulder impairments from more salient issue of their impact on plaintiff's ability to work); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). Accordingly, the fact that the Plaintiff has a number of documented infirmities, without more, is of little consequence in the disability determination process.

20

Moreover, while the ALJ did not explicitly reference the Plaintiff's testimony regarding the abundance of her medical appointments, it is evident from his decision that he was aware of and rejected her claimed need for such frequent treatment. The ALJ summarized the Plaintiff's care during the relevant time period and made clear that he did not entirely credit the Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms, reciting what he believed to be "good reasons for questioning the reliability" of her subjective complaints. (R. 23-30).[13] *See Floyd v. Colvin*, 2014 WL 1848275, at *5 (S.D. Ga. May 8, 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)) (finding no need for ALJ to expressly discount absenteeism assertion that was informed by the plaintiff's subjective complaints); *Gray v. Astrue*, 2012 WL 3070913, at * 5-6 (M.D. Fla. June 4, 2012) (explaining that plaintiff's absenteeism argument was based on faulty premise that ALJ was required to accept her assertion that she would need to miss several days of work a month when ALJ had discredited the claimed severity of her impairments); *Whitlow v. Astrue*, 2010 WL 1995608, at *5-7 (M.D. Ala. May 17, 2010) (citing *Wilson v. Barnhart*, 210 F. App'x 448 (5th Cir. 2006)) (stating that ALJ need not make separate finding on absenteeism issue where he was aware of relevant VE testimony, discounted plaintiff's subjective complaints, and found that she was capable of returning to her past work); *Roberts v. Colvin*, 2016 WL 6563490, at *6 (N.D. Ala. Nov. 4, 2016) (rejecting argument that ALJ erred in failing to account for VE testimony that

---

[13] As noted above, the Plaintiff does not expressly contest the ALJ's assessment of her credibility.

absenteeism would preclude employment where plaintiff relied only on her testimony as opposed to medical evidence or opinions to show need to miss work).

The ALJ also noted that the Plaintiff had been treated conservatively for both her physical and mental health issues, which provided an additional basis for him to discount her claimed need for frequent medical attention that would cause her to regularly miss work.  (R. 23-29).

Finally, notably absent from the record is any opinion evidence that the Plaintiff's medical treatment would necessarily require significant time away from work.

*D.*

The Plaintiff's remaining contention is that the ALJ erred by concluding that a stroke the Plaintiff claimed she had was not a medically determinable impairment. (Doc. 24 at 38-39).  This argument also does not survive scrutiny.

At step two of the sequential evaluation process, the ALJ must gauge whether the claimant has a medically determinable impairment (or combination of impairments) that is severe.  20 C.F.R. § 416.920(a)(4)(ii).  While this step is a "threshold inquiry" under which "only the most trivial impairments are to be rejected," *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)), the claimant nevertheless bears the burden of proof on the issue, *Doughty* 245 F.3d at 1278.

To establish the existence of a medically determinable impairment, a claimant must show that the impairment:

> result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 416.908. Such evidence, moreover, must derive from a medically acceptable source as defined by the Regulations. *Id.* at § 416.913 ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s).").

In this case, the ALJ's conclusion that the Plaintiff's claimed stroke was not a medically determinable impairment is supported by substantial evidence. (R. 20). The ALJ explained that, although there is mention in the record that the Plaintiff experienced a stroke, no diagnostic images substantiated this allegation. *Id.* Indeed, the ALJ noted that a magnetic resonance imaging scan from October 2015 showed no signs of infarct. *Id.*

The Plaintiff does not dispute these findings. Instead, she argues that the ALJ's conclusion is inconsistent with Dr. Johnson's assessment that the Plaintiff experienced a stroke leading to long-term memory loss and left-side weakness. (Doc. 24 at 39). A fair reading of Dr. Johnson's report, however, reveals that, while this language appears in the "conclusions" section of the report (R. 648), it is based on the Plaintiff's narrative to the doctor, rather than the doctor's own diagnosis or findings (R. 644).

The Plaintiff attempts to bolster her argument by reference to Dr. Trimmer's finding of memory impairment are similarly unpersuasive because it does not appear that Dr. Trimmer, a psychologist, attributed such an impairment to a stroke. (R. 636-

42).   Therefore, the only evidence backing the Plaintiff's claim of a stroke appears to consist of her own statement to Dr. Johnson that she "believes that she had a stroke" in 2013, along with her self-reported symptoms.  (R. 644).  Such allegations, however, do not satisfy the Regulations' requirements for establishing a medically determinable impairment.  *See Lopez v. Comm'r of Soc. Sec.*, 2015 WL 12844407, at *4-5 (M.D. Fla. Sept. 25, 2015) (concluding that plaintiff failed to produce adequate evidence to establish anxiety as a medically determinable impairment where relevant treatment records contained mostly plaintiff's complaints and lacked objective findings or signs supporting her alleged diagnoses).

Furthermore, the Plaintiff fails to explain how the outcome of her claim would have differed had the ALJ found the alleged stroke to be a medically determinable impairment.  On the authority set forth above and cited by the Commissioner, any such error on the ALJ's part would accordingly have been harmless.

## CONCLUSION

In light of all of the above, I recommend that:

1)    The Commissioner's decision be REVERSED and REMANDED for further proceedings before the Commissioner consistent with this Report and Recommendation.

2)    The Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case.

3)    The Court reserve jurisdiction on the matter of fees and costs pending further motion.

Respectfully submitted this 8th day of February 2019.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
Honorable James S. Moody, Jr., United States District Judge
Counsel of record